IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs September 14, 2004

## STATE OF TENNESSEE v. ROBBIE CHET WALLEY

**Direct Appeal from the Circuit Court for Obion County**
**No. 3-434     William B. Acree, Judge**

_____

**No. W2003-02987-CCA-R3-CD  - Filed October 7, 2004**

_____

The defendant, Robbie Chet Walley, was convicted of possession of drug paraphernalia and was sentenced to eleven months, twenty-nine days, all suspended except for sixty days.  On appeal, he argues that the trial court erred in denying alternative sentencing.  Based upon our review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and NORMA MCGEE OGLE, J., joined.

James T. Powell, Union City, Tennessee, for the appellant, Robbie Chet Walley.

Paul G. Summers, Attorney General and Reporter; Michelle Chapman McIntire, Assistant Attorney General; Thomas A. Thomas, District Attorney General; and James T. Cannon, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

The defendant pled guilty to possession of drug paraphernalia in the Obion County General Sessions Court and was sentenced to eleven months, twenty-nine days, with all but thirty days suspended.  He then appealed this sentence to the Obion County Circuit Court, and a sentencing hearing was held on December 12, 2003.

At the hearing, Deputy Brian Osborne of the Obion County Sheriff's Department testified that he responded to a call at the defendant's residence on August 26, 2003.  The defendant had called the sheriff's office and reported that an intruder was trying to break in and had taken his girlfriend's three-year-old child.  When Deputy Osborne arrived at the residence, the defendant, who appeared to be in a "hallucinogenic state," was outside talking to two other officers.  The defendant

told Osborne that "Jerry Sherrill was trying to climb through the windows of the house and up through the air conditioner ducts of the house." Osborne went inside the house where he found a naked three-year-old boy lying in the hallway near a bathroom. He later determined that the boy was the child of the defendant's girlfriend, Crissy Little.[1] Osborne also found a hypodermic needle on top of the shower stall in the bathroom. The defendant told the officers that he had "injected cocaine." After the defendant's grandmother arrived at the house, she told Osborne she had no knowledge of the needle and "it didn't belong to her house." Osborne said that the defendant was charged with possession of drug paraphernalia and child neglect.[2]

Crissy Walley, the defendant's wife, testified that she and the defendant had been married one month and that she was pregnant with the defendant's baby. She said the three-year-old boy, who was found on the floor the day of the defendant's arrest, was her son and that the defendant was babysitting him while she worked. She said her son was not harmed in any way that day. She said that Jeremy Menees had vandalized their house in the past.

The defendant testified that he called the police the day of his arrest because someone shot through the back window of the house. He told the police that Jeremy Menees might have done the shooting, but he never said anything about Jerry Sherrill. He also told the police that someone was trying to break in the house, but denied saying the intruder was in the duct work. The defendant said that when the officers arrived "they started focusing on me, you know, like, 'Something's wrong with you.'" He tried to show the window to the officers, but they would not look at it. He informed the officers that a three-year-old child was in the house. The defendant said the child was asleep in the floor without his pants on because he had spilled milk on them, and the defendant had put the pants in the dryer. The defendant denied telling the officers that he had injected cocaine. Asked about the hypodermic needle found in the house, the defendant explained that a nurse who came to the house to give his grandfather B12 shots must have left it there.

The defendant said he pled guilty to the child neglect charge because his attorney told him it was in his best interest to do so. He further said he pled guilty to the instant offense because his attorney told him he would receive probation if he did so. He said he was "shocked" at the sentence he received. The defendant said he and his wife planned to move to Nashville in order for him to start electronics and underwater welding school in January 2004. He said if he were incarcerated he would have to wait until March or April to start school. The defendant acknowledged that he had prior convictions for DUI and vandalism but said the convictions occurred eight years ago when he was eighteen years old.

Ruby McDaniel, the defendant's grandmother, testified that her husband did receive monthly B12 shots at the house. She said she was in the bathroom with Deputy Osborne when he found the needle on top of the shower. To her knowledge, the defendant had never used a needle to inject any

---

[1]By the time of the defendant's sentencing hearing, Ms. Little and the defendant had married.

[2]The defendant was convicted of child neglect in the Obion County Juvenile Court on November 4, 2003.

type of drug. On cross-examination, Mrs. McDaniel said that her husband had been in a nursing home for about six months. Asked if that meant her husband had been admitted to the nursing home in June 2003, before the instant offense occurred in August, Mrs. McDaniel said, "I don't – I couldn't tell you."

At the conclusion of the hearing, the trial court found that the defendant had shown no remorse and had been untruthful in his testimony. Applying enhancement factor (1), Tenn. Code Ann. § 40-35-114(1) (1997), the trial court sentenced the defendant to eleven months, twenty-nine days in the county jail, all suspended except for sixty days.

## ANALYSIS

The defendant argues that the trial court erred in denying alternative sentencing and "by using an enhancement factor solely for the purpose of punishing the defendant for statements made by the defendant during the sentencing hearing."

When an accused challenges the length and manner of service of a sentence, it is the duty of this court to conduct a *de novo* review on the record with a presumption that "the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d) (2003). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). The presumption does not apply to the legal conclusions reached by the trial court in sentencing the accused or to the determinations made by the trial court which are predicated upon uncontroverted facts. State v. Butler, 900 S.W.2d 305, 311 (Tenn. Crim. App. 1994); State v. Smith, 891 S.W.2d 922, 929 (Tenn. Crim. App. 1994); State v. Bonestel, 871 S.W.2d 163, 166 (Tenn. Crim. App. 1993). However, this court is required to give great weight to the trial court's determination of controverted facts as the trial court's determination of these facts is predicated upon the witnesses' demeanor and appearance when testifying.

In conducting a *de novo* review of a sentence, this court must consider (a) any evidence received at the trial and/or sentencing hearing, (b) the presentence report, (c) the principles of sentencing, (d) the arguments of counsel relative to sentencing alternatives, (e) the nature and characteristics of the offense, (f) any mitigating or enhancement factors, (g) any statements made by the accused in his own behalf, and (h) the accused's potential or lack of potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-103, -210; State v. Scott, 735 S.W.2d 825, 829 (Tenn. Crim. App. 1987).

The party challenging the sentence imposed by the trial court has the burden of establishing that the sentence is erroneous. Tenn. Code Ann. § 40-35-401, Sentencing Commission Cmts.; Ashby, 823 S.W.2d at 169.

Misdemeanor sentencing is controlled by Tennessee Code Annotated section 40-35-302, which provides, in part, that the trial court shall impose a specific sentence that is consistent with

the purposes and principles of the 1989 Sentencing Reform Act. See Tenn. Code Ann. § 40-35-302(b). Although the Sentencing Reform Act typically treats misdemeanants and felons the same, misdemeanants are not given the presumption of a minimum sentence. See State v. Seaton, 914 S.W.2d 129, 133 (Tenn. Crim. App. 1995). A separate sentencing hearing is not required in misdemeanor sentencing, but the trial court must "allow the parties a reasonable opportunity to be heard on the question of the length of any sentence and the manner in which the sentence is to be served." Tenn. Code Ann. § 40-35-302(a). A misdemeanor sentence, unlike a felony sentence, has no sentence range. State v. Baker, 966 S.W.2d 429, 434 (Tenn. Crim. App. 1997).

The trial court has great flexibility and discretion in fashioning a misdemeanor sentence. The sentence must be specific and in accordance with the principles, purposes, and goals of the 1989 Sentencing Act. Tenn. Code Ann. § 40-35-302(b); State v. Palmer, 902 S.W.2d 391, 393 (Tenn. 1995). The trial court should consider enhancement and mitigating factors in making its sentencing determinations; however, unlike the felony sentencing statute, which requires the trial court to place its findings on the record, the misdemeanor sentencing statute "merely requires a trial judge to consider enhancement and mitigating factors when calculating the percentage of a misdemeanor sentence to be served in confinement." State v. Troutman, 979 S.W.2d 271, 274 (Tenn. 1998). The trial court is authorized to place the misdemeanant on probation either immediately or after a term of confinement. Tenn. Code Ann. § 40-35-302(e). When a defendant challenges a misdemeanor sentence, this court conducts a *de novo* review with a presumption that the trial court's determinations are correct.

In sentencing the defendant, the trial court stated:

> What's bothering me, though, . . . [the defendant] has come into court and shown no remorse whatsoever for not only the incident for which he was on trial [sic] today, but also for the companion case which was decided in Juvenile Court. He shows no candor whatsoever, or a complete lack of candor. Somebody is not telling the truth.
>
> Mr. Osborne came in and testified that [the defendant] was intoxicated, he was claiming somebody was in his air conditioning system. . . . He testified that the defendant admitted to him that this needle was his. On the other hand, [the defendant] comes in and says, "That's not true. I was not intoxicated. I didn't say anything about the duct work. That wasn't my needle. I told them that." Somebody's not telling the truth.
>
> [The defendant], you would have helped yourself – and the Court finds that the testimony of the officer, Mr. Osborne, is credible and yours i[s] not. It would have been much more helpful had you come into court and said, "That's true. I made a mistake. I need to get on to Nashville." But you come into court and everything is

somebody else's fault. It's your lawyer's fault that you pled guilty in two different courts, yet you're innocent, completely innocent, did nothing wrong, but you pled guilty anyway. I just don't buy all of that.

Taking your lack of remorse and your lack of candor, you've been untruthful, enhancement factor number 1 applies. The Court thinks that some jail time is indicated in this case.

I'm going to sentence you to 11 months and 29 days in the county jail, to serve 60 days.

A trial court may deny alternative sentencing and sentence a defendant to confinement based on any one of the following considerations:

(A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

Tenn. Code Ann. § 40-35-103(1) (2003).

In determining that the defendant should serve sixty days of his sentence in confinement, the trial court applied enhancement factor (1), Tenn. Code Ann. § 40-35-114(1) (1997), "[t]he defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range," and found that the defendant had been untruthful and had shown no remorse.

In State v. Robert Duff and Vernita Cox, No. 02C01-9307-CR-00152, 1995 WL 390951, at *3 (Tenn. Crim. App. June 28, 1995), perm. to appeal denied (Tenn. Nov. 6, 1995), this court noted that "[i]n accordance with this general principle, Tennessee courts have repeatedly held that untruthfulness is a factor which may be considered in determining the appropriateness of probation." (citing State v. Neeley, 678 S.W.2d 48, 49 (Tenn. 1984); State v. Bunch, 646 S.W.2d 158, 160 (Tenn. 1983)). In addition, "[a]lthough untruthfulness is not mentioned as a factor in Tenn. Code Ann. § 40-35-103(1), this court has continued to declare it a relevant factor in determining the suitability of probation subsequent to the enactment of the 1989 Act." Id. (citing State v. Anderson, 857 S.W.2d 571, 574 (Tenn. Crim. App. 1992)).

According to testimony at the sentencing hearing, the defendant had been convicted in 1997 of DUI and two counts of vandalism, all arising out of the same incident. Additionally, as the result of his telephone call to the Obion County Sheriff's Department, which resulted in the charge which is the basis for this appeal, he also was charged with and convicted of child neglect. We note that the State has argued on appeal that the trial court's determination that the defendant should be incarcerated for a portion of his sentence is not affected by the holding in Blakely v. Washington, __ U.S. __, 124 S. Ct. 2531 (2004), because one of the reasons for overcoming the statutory presumption that the defendant was a favorable candidate for probation was his prior criminal record. In Apprendi v. New Jersey, 530 U.S. 466, 490, 120 S. Ct. 2348, 2362 (2000), the court concluded that the Sixth Amendment's prohibition against increasing punishment beyond the "statutory maximum" based upon additional findings made by the trial court did not apply to "the fact of a prior conviction." Accordingly, as to the present appeal, we conclude that even if the trial court erred in imposing a sixty-day period of confinement based on the court's determination that the defendant was not remorseful and was untruthful at the hearing, his prior criminal record supports the sentence.

## CONCLUSION

Based upon the foregoing authorities and reasoning, we affirm the judgment of the trial court.

_____

ALAN E. GLENN, JUDGE